UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| LINDA S. KELLER | CIVIL ACTION |
| VERSUS | NUMBER 12-335-RLB |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY | CONSENT CASE |

## RULING

Plaintiff, Linda S. Keller ("Plaintiff"), seeks judicial review of a final decision of the Commissioner of the Social Security Administration (the "Commissioner") pursuant to 42 U.S.C. § 405(g) denying Plaintiff's application for disability insurance benefits "under Title II and part A of Title XVIII of the Social Security Act." (Tr. 98-104). [1] Both parties having consented to proceed before a United States Magistrate Judge and the case was transferred to this Court for all further proceedings and entry of judgment pursuant to 28 U.S.C. § 636(c). For the reasons assigned below, the decision of the Commissioner is **AFFIRMED** and Plaintiff's appeal is **DISMISSED** with prejudice.

### I. PROCEDURAL HISTORY

On or about December 15, 2009, Plaintiff filed an application for benefits alleging a disability onset date of November 5, 2009. (Tr. 98). The claim was initially denied and Plaintiff filed a timely request for a hearing that was held on November 30, 2010 at which Plaintiff,

---

[1] References to documents filed in this case are designated by "(R. Doc. [docket entry number(s)] at [page number(s)])". Reference to the record of administrative proceedings filed in this case is designated by "(Tr. [page number(s)])".

1

represented by counsel, appeared and testified. (Tr. 29-53). A vocational expert ("VE"), Ms. Beverly Majors, also testified at the hearing. (Tr. 47-52).

An unfavorable decision was rendered by the Commissioner, through the Administrative Law Judge ("ALJ"), on January 11, 2011 (Tr. 17-25), finding that Plaintiff had not been under a disability from the alleged onset date of November 5, 2009 through the date of the decision. Plaintiff's request for review was denied by the Appeals Council on April 26, 2012. (Tr. 1-3). The ALJ's decision rested as the final decision when the Appeals Council denied the claimant's request for review. *See* 20 C.F.R. § 404.981 ("The Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless you . . . file an action in Federal district court . . . ."). The ALJ's final decision is now ripe for review under 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

This Court's review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. of N.Y. v. N.L.R.B.*, 305 U.S. 197, 229 (1938) (defining "substantial evidence" in the context of the National Labor Relations Act, 29 U.S.C. § 160(e)). The Fifth Circuit has further held that substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but no substantial evidence will be found only where there is a conspicuous absence of credible choices

or no contrary medical evidence." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983) (quotations omitted). Conflicts in the evidence are for the Commissioner "and not the courts to resolve." *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court may not reweigh the evidence, try the case de novo, or substitute its own judgment for that of the Commissioner even if it finds that the evidence preponderates against the Commissioner's decision. *See, e.g.*, *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994) ("This is so because substantial evidence is less than a preponderance but more than a scintilla."); *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988) ("we must carefully scrutinize the record to determine if, in fact, such evidence is present; at the same time, however, we may neither reweigh the evidence in the record nor substitute our judgment for the Secretary's"); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (same).

If the Commissioner's decision is supported by substantial evidence, then it is conclusive and must be upheld. *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000). If the Commissioner fails to apply the correct legal standards, or fails to provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal. *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987).

### III.  ALJ'S DETERMINATION

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520(a)(4). The burden rests upon the claimant throughout the first four steps of this five-step process to prove disability. If the claimant is successful in sustaining his or her burden at each of the first four steps, the burden shifts to the Commissioner at step five. *See Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991) (explaining the five-step process). First, the claimant must prove he is not currently engaged in

substantial gainful activity. 20 C.F.R. § 404.1520(b). Second, the claimant must prove his or her impairment is "severe" in that it "significantly limits your physical or mental ability to do basic work activities . . . ." 20 C.F.R. § 404.1520(c). At step three the ALJ must conclude the claimant is disabled if he proves that his or her impairments meet or are medically equivalent to one of the impairments contained in the Listing of Impairments. *See* 20 C.F.R. § 404.1520(d) (step three of sequential process); 20 C.F.R. pt. 404, subpt. P, app. 1 (Listing of Impairments). Fourth, the claimant bears the burden of proving he is incapable of meeting the physical and mental demands of his or her past relevant work. 20 C.F.R. § 404.1520(f).

If the claimant is successful at all four of the preceding steps then the burden shifts to the Commissioner to prove, considering the claimant's residual functional capacity, age, education and past work experience, that he or she is capable of performing other work. 20 C.F.R § 404.1520(g)(1). If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove that he or she cannot, in fact, perform that work. *Muse*, 925 F.2d at 789.

In the ALJ's decision, the ALJ first found that Plaintiff met the insured status requirements of the Act and that Plaintiff had not engaged in substantial gainful activity from her alleged onset date of November 5, 2009. (Tr. 19). At the second step, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease, degenerative joint disease of the right hip, obesity and depressive disorder. (Tr. 19). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments meeting or medically equaling one of the listed impairments. (Tr. 19-21). The ALJ specifically considered Listing 1.04A for disorders of the spine and Listing 12.04 for affective disorders.

4

The ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform sedentary work, as defined in 20 C.F.R. § 404.1567(a), limited to simple, unskilled work up to SVP ("specific vocational preparation") 3 level work. (Tr. 21). The ALJ determined that Plaintiff's complaints of disabling symptoms and limitations were not credible to the extent alleged. (Tr. 21-22). At the fourth step, the ALJ found that Plaintiff was unable to perform any past relevant work because such work exceeds the limitations of the above referenced RFC. (Tr. 23). At the fifth step, the ALJ elicited testimony from Beverly Majors, a vocational expert ("VE"), to determine the extent to which Plaintiff's impairments and limitations "erode the unskilled sedentary occupational base." (Tr. 24, 47-52). Based on the aforementioned RFC, and considering Plaintiff's age, education and work experience, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 24-25). The ALJ concluded that Plaintiff had not been under a disability, as defined by the Social Security Act, at any time from the alleged onset date through the date of the decision. (Tr. 25).

## IV. PLAINTIFF'S ALLEGATIONS OF ERROR AND COMMISSIONER'S RESPONSE

Plaintiff alleges that the ALJ was in error (R. Doc. 15). She claims that the ALJ's assessment of RFC and of Plaintiff's credibility was unsupported by substantial evidence (R. Doc. 15 at 7). This led to reliance on the VE's testimony based on a faulty hypothetical. Plaintiff also alleges that the ALJ's findings at step three were ambiguous, overly broad and contradicted by substantial evidence (R. Doc. 15 at 10).

The Commissioner responds that the ALJ performed a proper credibility analysis by considering Plaintiff's subjective complaints at the hearing as well as the objective medical evidence in the record (R. Doc. 17 at 4-8). The ALJ discussed Plaintiff's daily activities, the nature of her medical treatments, her lack of specialized mental health care, the reason she

5

discontinued work, and the inconsistencies between Plaintiff's complaints when compared to other evidence. The ALJ's credibility analysis was proper and the hypotheticals posed to the VE included those limitations that the ALJ found were established and supported by the record. The Commissioner also responds that the ALJ performed a proper listing analysis and that the ALJ explained why Plaintiff did not satisfy all of the criteria for any of the Listings (R. Doc. 17 at 8-10).

## V. ANALYSIS

### A. ALJ's Residual Functional Capacity Assessment

The ALJ determined that Plaintiff had the residual functional capacity ("RFC") "to perform sedentary work . . . limited to simple, unskilled up to SVP 3 level work." (Tr. 21). According to the regulations, sedentary work involves:

> lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a). Unskilled work is work which may not require considerable strength and "which needs little or no judgment to do simple duties that can be learned on the job in a short period of time" — typically 30 days. 20 C.F.R. § 404.1568(a). A specific vocational preparation ("SVP") time of 3 to 4 corresponds to "semi-skilled work." SSR 00-4P.[2] Semi-skilled work typically requires "some skills but does not require doing the more complex work duties. Semi-skilled jobs may require alertness and close attention . . . ." 20 C.F.R. § 404.1568(b).

---

[2] The specific vocational preparation time for a given occupation is described in the Department of Labor's Dictionary of Occupational Titles ("DOT"). SSR 00-4P.

Plaintiff argues the ALJ's determination is not supported by substantial evidence for two reasons. First, Plaintiff suggests the ALJ failed to consider relevant evidence in the record which supports her disability. (R. Doc. 15 at 8). Second, Plaintiff argues the ALJ erroneously determined her complaints regarding the level and severity of her pain were not credible. (R. Doc. 15 at 8). After reviewing the entire record, the Court finds the ALJ's RFC determination is supported by substantial evidence.

### i. Review of Objective Medical Evidence

The ALJ "is responsible for assessing the medical evidence and determining the claimant's residual functional capacity." *Perez v. Heckler*, 777 F.2d 298, 302 (5th Cir. 1985). The ALJ's RFC decision can be supported by substantial evidence even if the ALJ does not specifically discuss all the evidence that supports his or her decision or all the evidence that he or she rejected. *Falco*, 27 F.3d at 163-64. A reviewing court must defer to the ALJ's decision when substantial evidence supports it, even if the court would reach a different conclusion based on the evidence in the record. *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988); *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). The court "may only scrutinize the record" and take into account whatever fairly detracts from the substantiality of the evidence supporting the ALJ's decision. *Leggett*, 67 F.3d at 564. Accordingly, a "no substantial evidence" finding is appropriate only if there is a conspicuous absence of credible evidentiary choices or no contrary medical findings to support the ALJ's decision. *Johnson*, 864 F.2d at 343-44.

Plaintiff alleges the ALJ ignored her (1) marked stenosis, (2) bony neural foraminal narrowing, (3) limited range of motion in extension, (4) antalgic gait, (5) motor weakness, (6) positive straight leg raising test and (7) sensory loss in her right femoral cutaneous nerve distribution, in assessing her RFC. (R. Doc. 15 at 8).

7

Contrary to Plaintiff's argument, the ALJ sufficiently discussed and considered the objective medical evidence contained in the record. Specifically, the ALJ noted that her medical records indicated some decreased range of motion, muscle spasm, lumbar disc herniation with radiculopathy and findings of spinal stenosis. (Tr. 22). The ALJ also took into account Plaintiff's concentration and memory issues associated with her mental impairments. (Tr. 23). The ALJ extensively considered Plaintiff's obesity and recent weight gain and any affect it may have on her impairments. (Tr. 22). The ALJ found that the record did not support a determination that Plaintiff's recent weight gain caused any "additional significant limitations." (Tr. 22).

The Court has reviewed the record and finds that the ALJ's RFC determination is supported by substantial evidence. Plaintiff devotes time in both her brief and reply to argue that the ALJ failed to note that the stenosis was "marked." Contrary to Plaintiff's complaint that this was not considered by the ALJ, it is specifically noted in the decision that there was stenosis at the L3-4 and L4-5 (Tr. 22). Other than her protest, Plaintiff offers nothing to indicate the import of Dr. Trahan's use of the adjective "marked" – simply indicating that the stenosis was evident or clearly noticeable. The medical documentation in the record likewise reflects these findings but gives them no added significance. On July 31, 2008, Dr. Robert Trahan, a radiologist, described his review of Plaintiff's CT scan of the lumbar spine. At both L3-4 and L4-5, Dr. Trahan found "generalized disc bulging . . . with an acquired spinal stenosis at this level." (Tr. 212). After describing each lumbar region, Dr. Trahan found: "There is evidence of generalized bulging and associated spinal stenosis at L3-4 and L4-5 with the findings most marked at the L4-5 level." (Tr. 212). Again, the ALJ noted this in his RFC assessment. Plaintiff's records also indicate a finding of bilateral neural foraminal narrowing, however, those findings were only

8

"mild." (Tr. 324). Plaintiff's records also show that she denied having any "weakness" and had a motor strength of 5/5, "normal" gait and "intact" sensation. (Tr. 319-320).[3]

Therefore, the ALJ's RFC determination and the objective medical evidence discussed in his decision convince the Court that he considered all of the available objective medical evidence and all of Plaintiff's symptoms and impairments. The Court's conclusion is bolstered by the ALJ's determination of Plaintiff's severe impairments, which included degenerative disc disease, degenerative joint disease of the right hip, obesity and depressive disorder. (Tr. 19). However, despite these severe impairments, the ALJ appropriately found they were not so debilitating that Plaintiff was incapable of engaging in any type of substantial gainful activity.

### ii. Credibility

In assessing credibility, the ALJ must consider the entire record, including medical signs and laboratory findings and statements by the claimant and his or her treating or examining sources concerning the alleged symptoms and their effects. 20 C.F.R. § 404.1529(c)(1). Additionally, the regulations provide a non-exclusive list of factors that the ALJ must consider. See 20 C.F.R. § 404.1529(c) (2011).[4] Nevertheless, the Fifth Circuit has held that the ALJ is not required to follow "formalistic rules" in assessing credibility, and the ALJ must articulate his or

---

[3] Additional evidence contained in Plaintiff's medical records, which demonstrates that the ALJ's determination was supported by substantial evidence, is discussed in subsequent sections.

[4] These factors include:

  (i)   Your daily activities;
  (ii)  The location, duration, frequency, and intensity of your pain or other symptoms;
  (iii) Precipitating and aggravating factors;
  (iv)  The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
  (v)   Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
  (vi)  Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
  (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3).

9

her reasons for rejecting a claimant's subjective complaints only "when the evidence clearly favors the claimant." *Falco*, 27 F.3d at 163.

Ultimately, the mere existence of pain is not an automatic ground for disability, and subjective evidence of pain does "not take precedence over conflicting medical evidence." *Harper v. Sullivan*, 887 F.2d 92, 96 (5th Cir. 1989). Likewise, an individual's statements regarding pain and other symptoms alone are not conclusive evidence of disability and must be supported by objective evidence of a medical impairment that could reasonably be expected to produce the pain or other symptoms alleged. *Harper*, 887 F.2d at 96 (quoting 42 U.S.C. § 423(d)(5)(A)).

The ALJ began his credibility assessment by acknowledging that Plaintiff's "lower back and leg problems, headaches, and anxiety" could reasonably be expected to produce lower back and right leg pain and cause issues with concentration and focus — the symptoms that Plaintiff alleges. (Tr. 21). Nonetheless, he found Plaintiff's "statements concerning the intensity, persistence and limiting effects" of her alleged symptoms were not supported by objective evidence. (Tr. 21). Before making this determination, the ALJ considered Plaintiff's medical records, daily activities, testimony and reasons for leaving her previous employment.

The ALJ indicated that Plaintiff's medical records contradicted her allegations of pain, pointing out that Plaintiff had received "essentially routine and conservative" treatment "for the allegedly disabling impairments" (Tr. 23). *See Franzen v. Astrue*, 555 F. Supp. 2d 720, 730-31 (W.D. Tex. 2008) (affirming denial of benefits and noting ALJ considered, among other things, that "plaintiff had received . . . conservative care" (medication) "for his back complaints . . . , suggesting . . . plaintiff's back pain was not as constant or severe as plaintiff alleged it to be."). He noted an absence of any "clinically diagnosed muscle atrophy in the allegedly affected

muscle groups — a clear sign that the claimant must have been using those muscles in a manner contrary to someone dealing with allegedly constant debilitating pain." (Tr. 23). The ALJ also concluded that Plaintiff's symptoms and impairments were not as severe as alleged because she had not exhibited any "motor, sensory, neurological, reflex or circulatory deficits on clinical examination." (Tr. 23).

These determinations are supported by the medical evidence contained in the record. Plaintiff's medical records indicate that her muscle strength is consistent with an absence of atrophy. *See Puckett v. Astrue*, No. 12-2059, 2012 WL 5902427, at *4 n.1 (W.D. Ark. Nov. 6, 2012) ("Atrophy is defined as the wasting or loss of muscle tissue."); 20 C.F.R., pt. 404, subpt. P, app. 1 § 1.04A) (associating atrophy with muscle weakness and motor loss). Dr. Dennis found Plaintiff's motor strength was a 5/5. (Tr. 330). Likewise, Dr. Michael Romaguera consistently opined that her "motor strength in all extremities" was a 5/5. (Tr. 313).

Plaintiff's records establish that she "ambulates without difficulty," which is consistent with the ALJ's determination that Plaintiff has not exhibited any motor deficiencies (Tr. 313). *See* 20 C.F.R., pt. 404, supbt. P, app. 1 § 1.00B2b(1) ("Inability to ambulate effectively means an extreme limitation of the ability to walk . . . .").

The ALJ then appropriately considered "the claimant's daily activities" in conjunction with her alleged level and severity of symptoms. *See Leggett*, 67 F.3d at 565 n.12 (considering plaintiff's contradictory testimony that he "was able to care for his three daughters, perform household chores, cut the grass in small increments, and even walk up to six blocks at a time" to discount his allegations of pain. *Id.* at 565). Plaintiff testified that "a lot of standing and a lot of walking, lifting" aggravates her condition. (Tr. 37). Plaintiff then explained that she could walk for no more than 15 minutes and stand for 10 to 15 minutes before having to sit, but that she

11

could sit for no more than 15 to 20 minutes before having to get up. (Tr. 40-41). Alternating positions, according to the Plaintiff, is necessitated by her pain. Nonetheless, when asked about her daily activities, Plaintiff inconsistently responded that she takes her "medications and basically sit[s] on the couch on a heating pad." (Tr. 37). Specifically, Plaintiff estimated that she spent an average of 8 hours a day "[s]itting on the couch with my legs elevated with the heating pad to my back and a pillow." (Tr. 45) ("About eight hours."). Based on Plaintiff's own account, the ALJ appropriately discredited Plaintiff's alleged need to alternate positions roughly every 20 minutes. The Court further notes that an ability to sit for 8 hours at a time is consistent with sedentary work — Plaintiff's RFC. *See Falco*, 27 F.3d at 163 (ALJ's RFC of sedentary work was supported by substantial evidence considering plaintiff was "capable of sitting most of the day").

Likewise, when asked how much she could lift, Plaintiff responded that she thought she could lift "[o]ne to three pounds." (Tr. 41). However, Plaintiff also answered affirmatively when asked whether she could lift a gallon of milk, which weighs roughly 8.5 pounds (Tr. 41).[5] Plaintiff also explained that her medications helped her symptoms and that she "wouldn't be able to manage without them," which does not support a finding of debilitating pain (Tr. 40). *See Selders v. Sullivan*, 914 F.2d 614, 618-19 (5th Cir. 1990) ("Pain constitutes a disabling condition under the Social Security Act only when it is constant, unremitting, and wholly unresponsive to therapeutic treatment.") (quotations omitted).

Plaintiff also alleges the ALJ completely ignored her Minnesota Multiphasic Personality Inventory ("MMPI") results and her allegations of concentration and memory issues. To the contrary, the ALJ considered Plaintiff's mental impairments in his opinion (Tr. 20-21) and

---

[5] *See Lowe v. Ubanks*, No. 13-1265, 2013 WL 3558200, at *1 n.1 (W.D. La. July 11, 2013) ("A gallon of milk weighs approximately 8.5 lbs."); *Bryant v. Colvin*, No. 12-1222, 2013 WL 4413336, at *8 (W.D. La. Aug. 14, 2013) (8.33 pounds); *Aviles v. Astrue*, No. 11-301, 2012 WL 10982774, at *4 (S.D. Tex. March 6, 2012) (8.8 pounds).

12

Case 3:12-cv-00335-RLB   Document 20   09/25/13   Page 12 of 19

determined that Plaintiff suffered from depressive disorder, which constituted a severe impairment (Tr. 19). Additionally, the ALJ considered Plaintiff's allegations of concentration and memory difficulties, but found them not credible.

According to Plaintiff, her mental impairments prevent her from concentrating and she experiences difficulties when trying to think or remember. (Tr. 44). However, she testified that during the day she often worked crossword puzzles and read books. (Tr. 38). Plaintiff was asked whether she had "any difficulties completing the puzzles . . . or reading." (Tr. 44). She responded that she completed the crossword puzzles, but rarely read the books to completion — not due to concentration issues; instead, she "los[t] interest in it." (Tr. 44-45). As the ALJ discussed, this testimony does not support, and in fact contradicts, Plaintiff's allegations that she is unable to maintain concentration and cannot recall information. Therefore, Plaintiff is incorrect in arguing the ALJ ignored her mental impairments. He considered them, but found them less severe and debilitating than Plaintiff alleged.

### B. Vocational Expert

Plaintiff argues that the ALJ committed reversible error by failing to incorporate any sit/stand options as well as her MMPI results in his hypotheticals posed to the vocational expert. In *Bowling v. Shalala*, the Fifth Circuit articulated the test for determining when a defective hypothetical question to a vocational expert will produce reversible error:

> Unless the hypothetical question posed to the vocational expert by the ALJ can be said to incorporate reasonably all disabilities of the claimant recognized by the ALJ, and the claimant or his representative is afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical questions (including additional disabilities not recognized by the ALJ's findings and disabilities recognized but omitted from the question), a determination of non-disability based on such a defective question cannot stand.

36 F.3d 431, 436 (5th Cir.1994).

13

Plaintiff correctly identifies the absence of any sit/stand option or mental impairment discussion in the ALJ's hypothetical questions. (Tr. 50-51). This is consistent with the ALJ's RFC determination. Furthermore, in accordance with *Bowling*, Plaintiff's attorney was "afforded the opportunity to correct deficiencies in the ALJ's question" on cross examination of the vocational expert (Tr. 51-52). *Bowling*, 36 F.3d at 436. During his questioning, Plaintiff's counsel incorporated the following limitations: (1) having to "alternate between sitting, standing, and walking, due to chronic pain;" and (2) "only occasionally be[ing] able to sustain satisfactory concentration, persistence, and pace for up to one-third of the workday" due to "chronic pain and a grief reaction." (Tr. 51-52).

Despite Plaintiff's suggestions, the ALJ's opinion took into consideration her counsel's hypothetical questions. (Tr. 24). The ALJ discredited them, however, because they incorporated the same limitations the ALJ had previously found not credible. The Court has found that the ALJ's RFC determination, without the limitations proposed by her counsel, was supported by substantial evidence. Therefore, Plaintiff's allegation of reversible error is without merit.

### C. ALJ's Listing Analysis

At step three, the ALJ considers the severity of the claimant's impairments without regard to vocational factors. The ALJ applies the Social Security Administration's Listing of Impairments, which "describes for each of the major body systems impairments that [the SSA] consider[s] to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a). A claimant whose impairment (or combination of impairments) meets or equals the criteria of a Listing is disabled and entitled to benefits. For that reason, the criteria in the Listings are "demanding and stringent." *Falco*, 27 F.3d at 162. "For a claimant to show that his impairment

14

matches a listing, it must meet all of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). An impairment that exhibits only some of the criteria, no matter how severely, does not qualify. *Sullivan*, 493 U.S. at 529-32.

The ALJ should identify the listed impairment for which the claimant's symptoms fail to qualify and provide an explanation as to how he or she determined that the symptoms are insufficiently severe to meet any listed impairment. A bare and summary conclusion that a plaintiff does not meet the criteria of any Listing is beyond meaningful judicial review. *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). Even if a court determines that the ALJ failed to state the reasoning for an adverse determination at step three, a reviewing court must still evaluate whether the error was harmless. *Audler*, 501 F.3d at 448.

The ALJ here determined that, "[a]lthough the claimant has severe impairments, they do not meet the criteria of any listed impairments . . . , specifically 1.04(A)."[6] (Tr. 19). Listing 1.04A describes disorders of the spine:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine) . . . .

20 C.F.R. pt. 404, subpt. P, app. 1 § 1.04A. The ALJ's limited explanation states that "[n]o treating or examining physician has mentioned findings equivalent in severity to the criteria of

---

[6] The ALJ also considered Listing 12.04 and determined it was inapplicable. Plaintiff does not allege any error with respect to that determination.

any listed impairment of the Listing of Impairments" and "the State Agency medical consultant . . . has reached the same conclusion." (Tr. 19).[7]

Plaintiff alleges the "ALJ's findings at step 3 were ambiguous, overly broad and contradicted by substantial evidence." (R. Doc. 15 at 10). The Court agrees with Plaintiff to the extent she argues the ALJ's opinion is "ambiguous" and "overly broad." The ALJ fails to point to any objective medical evidence in the record to support his conclusion and his bare and conclusory determination was erroneous. *See Audler*, 501 F.3d at 448.

Even having determined that it was error for the ALJ to fail to state the reasons for his step three determination that Plaintiff did not meet Listing 1.04A, the Court must continue to a harmless error analysis. *See Morris v. Bowen*, 864 F.2d 333, 334 (5th Cir. 1988). Procedural perfection is not required in administrative hearings, and a court will not vacate a judgment unless "the substantial rights of a party have been affected." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988). Thus, Plaintiff must establish that the ALJ's error casts into doubt the existence of substantial evidence to support the ALJ's decision. *See Morris*, 864 F.2d at 335.

Plaintiff alleges "the ALJ's assertion that no treating or examining physician has even mentioned findings equivalent to Listing 1.04(A) is clearly wrong." (R. Doc. 15 at 11). According to Plaintiff, the ALJ ignored the record evidence indicating (1) "neurological deficits consistent with a lumbar radiculopathy," (2) "marked spinal stenosis," (3) "limited range of motion in extension," (4) "a positive straight leg raising test," (5) "sensory loss," (6) "slow and guarded antalgic gait," and (7) "motor weakness in foot and plantar flexion." (R. Doc. 15 at 11).

---

[7] Plaintiff additionally argues that the ALJ's decision is erroneous because he inappropriately treated the State Agency Medical Consultant's opinion as a medical opinion, and therefore, afforded it too much weight. (R. Doc. 15 at 11). The Court notes that the ALJ's decision does not give any indication that the ALJ treated the medical consultant's opinion as a medical one. Because the Court finds the ALJ's analysis is too conclusory to allow for any meaningful judicial review, but finds that any error was harmless, the Court need not address this argument.

16

Contrary to Plaintiff's assertions, the record does not indicate that her impairments meet or equal the criteria of Listing 1.04A. *See Sullivan*, 493 U.S. at 530 ("An impairment that manifests only some of those criteria, no matter how severely, does not qualify."). First, Listing 1.04A requires "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, [and] motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine) . . . ."

At several instances, the record states that Plaintiff's physicians have found "[n]o definitive root impingement." (Tr. 324); (Tr. 326) ("no definite . . . nerve root impingement."). At one time, Dr. Dennis indicates that Plaintiff's July 22, 2010 CT scan showed "root compression," but he characterized that compression as "mild over the areas." (Tr. 319). The CT scan referenced by Dr. Dennis was ordered by him and interpreted by Dr. David Hoff, a radiologist. Dr. Hoff specifically found no evidence of nerve root impingement and likewise makes no mention of compression. (Tr. 324). The record does not indicate whether Dr. Dennis conducted his own review of the CT scan or was opining on the report that he ordered from Dr. Hoff, which was contained in the records provided by Dr. Dennis.

Plaintiff points to a finding of "marked spinal stenosis" at L4-5 in both her appeal and reply brief. (R. Doc. 15 at 11, R. Doc. 18 at 1-2). As previously discussed, Dr. Trahan found "generalized disc bulging . . . with an acquired spinal stenosis at this level" based on a CT scan conducted July 31, 2008. (Tr. 212). Dr. Trahan's overall "impression" was that: "There is evidence of generalized bulging and associated spinal stenosis at L3-4 and L4-5 with the findings most marked at the L4-5 level." (Tr. 212). No evidence of nerve root compression or impingement was noted. Dr. Reina's observation of an MRI of Plaintiff's lumbar spine

17

conducted on November 6, 2008 found "no scoliosis," and "no disc herniation," even at L4-5, which demonstrated a "mild bulging annulus with facet arthropathy." (Tr. 215). Dr. Reina also found "[m]ild degenerative disc narrowing at L5-S1" from Plaintiff's July 17, 2008 X-ray. (Tr. 221). No compression was noted. Dr. Charles Greeson found "[n]o interspace narrowing, fractures, subluxations, destructive lesions, or other significant abnormality" during his examination of Plaintiff's lumbar spine. (Tr. 316). Evidence of stenosis, remarkable or not, does not serve to satisfy the necessary criteria of the Listing.

While Plaintiff correctly notes a finding of bilateral bony neural foraminal narrowing, she fails to indicate that those findings were "mild." Specifically, Dr. David Hoff determined that Plaintiff had "[b]ilateral bony neural foraminal narrowings without evidence of definitive L4 nerve root impingement" at L3-4 and only "[m]ild bilateral bony foraminal narrowing" at L5-S1. (Tr. 324). Also inconsistent with Plaintiff's allegations were Dr. Dennis' reports indicating that Plaintiff "denies . . . weakness," has a motor strength of 5/5, "normal" gait, and "intact" sensation. (Tr. 319-20). While Dr. Dennis notes during a different exam that Plaintiff has "diminished sensation in the right lateral femoral cutaneous nerve distribution," this does not suggest a "motor loss . . . accompanied by sensory or reflex loss," as described by the Listing. Moreover, Dr. Dennis does not indicate the level of diminishment, nor does he indicate a total loss of sensation. (Tr. 330). Dr. Dennis also described Plaintiff's "MRI of the hip" as "unremarkable." (Tr. 319).

Likewise, Dr. Michael Romaguera's April 21, 2010 notes indicate that Plaintiff had "[a]ge-appropriate neurological function" — "ambulates without difficulty; symmetric deep tendon reflex (DTR); 2+ (normal); motor strength in all extremities; 5/5." (Tr. 313). Dr. Rodney Tregle consistently noted that she "moves all extremities without difficulty and are equally

18

bilateral." (Tr. 244). On April 2, 2008, Plaintiff's medical records state: "Bilateral legs; full range of motion (FROM); range of motion (ROM) normal." (Tr. 247).

After reviewing the entire record, Plaintiff meets some, but not all of the requirements of Listing 1.04A. Therefore, the ALJ's determination that Plaintiff does not meet Listing 1.04A is supported by substantial evidence. Plaintiff's appeal is denied as it relates to this issue.

## VI.  CONCLUSION

Accordingly, for the reasons assigned, the decision of the Commissioner denying Plaintiff's application for disability insurance benefits is **AFFIRMED**, and the Complaint (R. Doc. 1) of Plaintiff, Linda S. Keller, is **DISMISSED with prejudice**.

Signed in Baton Rouge, Louisiana, on September 25, 2013.

                                       **RICHARD L. BOURGEOIS, JR.**
                                       **UNITED STATES MAGISTRATE JUDGE**